In re Johnston, Bankrupt.

[Cite as In re Johnston, Bankrupt, 15 Ohio Misc. 207.]

(No. 43647—Decided January 30, 1968.)

United States District Court for the Southern District of Ohio Eastern Division.

*Mr. R. E. Lamm*, for Glen Dwayne Johnston.
*Mr. Robert M. Wasylik*, trustee, *pro se.*

Kelleher, referee in bankruptcy. This cause came on for consideration, after due notice and hearing, upon objections by bankrupt to trustee's determination of exempt property, which objections were seasonably filed herein on April 25, 1967. Said hearing was held on May

23, 1967, at which appeared the trustee and counsel for the bankrupt.

It appears that the essential and material facts are not in dispute. This bankruptcy proceeding was commenced by the filing of a voluntary petition on March 10, 1967. In his schedule B-1 the bankrupt listed ownership of an interest in real estate, with the statement "Currently occupied by bankrupt and family." In his schedule B-3a. he listed "Claim against Internal Rev. Service on 1966 Tax Return [estimated value] 200.00." In his schedule B-5 he claimed the tax refund exempt pursuant to Section 2329.81, Revised Code. He did not claim any interest exempt in the real estate. By the time of the first meeting of creditors, the tax refund had been received by the bankrupt and deposited in a bank account. The actual amount of the refund is $334.08. The trustee was appointed and became qualified. He filed a trustee's report of exempt property on April 18, 1967. He did not set off the tax refund as requested. The objections were then filed as aforesaid. The objections have been heard, briefs filed by the trustee and by counsel for the bankrupt, and the issue submitted.

The briefs of both parties display earnest effort and the expenditure of research time going far beyond the dollar value in issue, worthy of the best in advocacy. Their efforts deserve careful consideration by the court, notwithstanding the small amount of money involved. Although completely immaterial to the legal issue, it is interesting to note that should the trustee prevail and a dividend be declared, such dividend can be paid only to the United States, since only one claim has been timely filed. This entire dispute might have been avoided if the Internal Revenue Service in possession of the fund might somehow have paid it to the United States on the F. H. A. claim which is within a few dollars of the exact amount refunded to the bankrupt by I. R. S.

There is but a single issue to be determined: Is this bankrupt entitled to the benefit of Section 2329.81, Revised Code? If he is not, then the objections must be overruled

and the trustee's report of exempt property left to stand approved as filed. If he is so entitled, then the objections must be sustained and the trustee directed to file an amended report.

All the case authorities cited in the briefs have been examined closely, along with others. As hereinafter explained the court is of the opinion that the trustee is correct in his report.

It is well-settled now that with regard to exemption claims, as with many other rights, duties and privileges in bankruptcy matters, the date of filing and adjudication, is the date that controls. It is sometimes called the "date of cleavage." (As to homestead in particular see *White* v. *Stump*, 266 U. S. 310.) All assets of a bankrupt on that date pass to his trustee as of that date even though the trustee is not, in practice, named until later. Assets as to which exemptions may attach nonetheless pass to the trustee, subject to his duty to set apart the exempt items as to which proper exemption claims have been asserted in the appropriate schedule. With very limited exceptions, assets acquired by a bankrupt immediately after the "date of cleavage" do not pass to his trustee. Claims for exemption must speak as of the date of filing and the trustee is required to pass upon exemptions in accordance with the bankrupt's factual situation as it existed on that date. On these principles there is no apparent disagreement between the parties.

In addition, there seems to be no disagreement that a federal tax refund is exemptible under Section 2329.81, Revised Code, to any bankrupt who qualifies under the provisions of that code section. Here starts the disagreement, not only between the parties, but apparently between Ohio case law and Federal case law as announced in some old bankruptcy decisions.

Assuming the cases do conflict, which control? As early as 1910 the 6th Circuit Court of Appeals held in a bankruptcy case involving a Kentucky homestead exemption statute: "The Federal Courts are accustomed in such cases to follow the decisions of the court of last

resort of the state, whose laws are so drawn in question.'' *Matter of Baker*, 24 Am. B. R. 411, 413; and later at page 414. ''We, of course, agree that where the decisions of the state court are in conflict and point to no definite rule touching the construction of a statute of the state, the Federal Courts are quite as much at liberty to place their own construction upon the statute as they would be if the state court had not construed it at all. *But if there be a rule of decision which is reasonably clear* with respect to a given statute, we think *the Federal Courts are bound* in a case like this to follow the rule rather than to undertake to determine upon their own interpretation whether the state court may not change the rule in the future.'' (Emphasis supplied.) In 1941 the 6th Circuit, in a bankruptcy concerning an Ohio exemption statute, after commenting upon the absence of any Ohio court decision interpreting the statute, held ''We are left therefore to our own view of the law * * *.'' *Doethlaff* v. *Penn Mutual Life Insurance Co. et al.*, 45 Am. B. R. (N. S.) 435, 439. In the interim, of course, the United States Supreme Court had clearly adopted the concept that Federal Courts, which had a bent to be so, were not free and independent spirits, but had an obligation to apply state rules of decision in substantive matters. *Erie Railroad* v. *Thomkins*, 304 U. S. 64; and see *West* v. *A. T. & T.*, 311 U. S. 223.

It would seem then that if the Ohio Supreme Court has announced a reasonably clear rule upon the single issue before this court, then I am compelled to apply it. Has it done so? I believe it has.

In *Bartram* v. *McCracken*, 41 Ohio St. 377, the highest court of Ohio in a very clear pronouncement, not the least hazy held that: ''The allowance demanded could only be made to 'any resident of Ohio being the head of a family and *not the owner of a homestead*' (citing statute), at the time of his demand, although the homestead was incumbered to more than its value, B was still its only owner.'' (Emphasis used in this opinion.) The court entered into no lengthy discussion, simply emphasized the language of the statute and denied the claim of execution made to per-

sonal property notwithstanding the lack of equity in the homestead. If any doubt remained that a reasonably clear rule had thus been announced, it disappeared with the decision of *Biddinger* v. *Pratt*, 53 Ohio St. 719. There at page 721 the highest court of this state stated: "Under the principle laid down in *Bartram* v. *McCracken*, 41 Ohio St. 377, he was the owner of a homestead, and therefore not entitled to hold exempt from execution personal property in lieu of a homestead." The Ohio Supreme Court has not retreated from its clearly stated position; it cited both cases in *Schumacher* v. *Ohio Savings & Trust Co.* (1929), 121 Ohio St. 446, 449. It would seem that these cases coupled with the plain and unambiguous wording of the statute (now Section 2329.81, Revised Code), should have been enough under the 6th Circuit's holding in *Matter of Baker, supra,* to have promoted uniformity between the Ohio decisions and Federal Court decisions in bankruptcy matters.

However, a small group of bankruptcy decisions evolved in a very brief span of time which, if followed, would seem to frustrate the desirable uniformity, and are said to distinguish the Ohio Supreme Court cases. The cases are three in number, all originated in the Northern District of Ohio, and all involved the question now before this court. In each, the referee found that the bankrupt at the date of filing owned a homestead, and therefore apparently following the plain meaning of the Ohio statute and the *Bartram, Biddinger* and *Baker cases,* denied the applicability of the alternative Ohio statute on the basis that each of these bankrupts could not seek the benefit of a statute reserved only to those "not the owner of a homestead." The decisions of the referee (or referees, perhaps) are not reported, but it is apparent from subsequent proceedings what those decisions were.

In one case, on some rather adroit, but questionable reasoning, District Judge Westenhaver reversed the referee, *held* that *Bartram* and *Biddinger* did not sustain the referee's conclusion, and that "It is illogical, to say the least, to assert that the bankrupt has a homestead when

it is covered by valid mortgages in excess of its value."
He expounded upon the liberality with which exemption
laws ought to be construed and seemingly made his deter-
mination based upon hindsight rather than the fact situa-
tion which existed at the date of bankruptcy. A careful
reading of the opinion raises a question whether there
existed much understanding of the relationship between
the three Ohio statutes cited especially in light of the
statement: "It is true, his claim of $500 is made under
Section 11737, General Code, which provides only for
the payment thereof from real estate owned by the bank-
rupt, *other than his homestead * * *.*" (Emphasis sup-
plied.) This statute which is now Section 2329.80, Revised
Code, did not deal with other real estate; it treats now, and
did then, only with homestead realty. The decision was
not appealed, but was regrettably, published. *In re Rad-
cliffe* (1917), 243 F. 716.

In a second case in an opinion written three months
after *Radcliffe,* Judge Westenhaver spoke again to the
issue, and again reversed the referee's decision. In this
case, he cited his previous decision in *Radcliffe* five times,
and held "that neither the reasoning nor the decision in
*Bartram* v. *McCracken* has any application." He stated:
"In my opinion, it (the decision of the referee based on
*Bartram* and *Biddinger*) is unsound and in conflict with
the reasoning, if not the ruling of the Supreme Court of
Ohio in numerous cases." No such cases were cited. It is
apparent that his ruling was based upon his own view of
what Ohio law ought to be, and that he searched for justi-
fication of his belief in various cases which spoke for a
liberality of interpretation of Ohio exemption statutes,
principal among which was his own prior decision in
*Radcliffe.* This case was not appealed, but again regret-
tably was published. *In re Hewitt* (1917), 244 F. 245.

Judge Westenhaver again had an exemption question
before him, and again apparently reversed the referee.
Although this decision, if published, was not found by me,
it was appealed. The Court of Appeals sustained. It
cited *Radcliffe,* but did not mention *Bartram* or *Biddinger,*

or, in fact, any Ohio case at all. With regard to Ohio law, the court said: "We find nothing in the cited decisions of the Ohio state courts compelling such construction." Apparently, these cases were not cited to it, or, if cited, were deemed of no importance to the question. It did cite its former decision in *Baker* as the basis for following Ohio cases on a different question. It assured its acceptance of "* * * the construction of the Ohio statute adopted by the Ohio courts, as contemplating a selection of specific articles of personalty before execution sale." However, as set forth in the third headnote, it proceeded to find that the statute here in question should be construed in favor of the bankrupt. But, the bases for its decision in this regard, rendered almost fifty years ago, appear to be in conflict with more recent decisions of the Court of Appeals itself and of the United States Supreme Court. The Court of Appeals case discussed is *In re Stitt* (1918), 252 F. 1.

So far as I can discover the Court of Appeals has never since directly considered the question, nor has *Stitt* been cited and followed in any reported case dealing with the issue being considered. On the other hand, *Bartram* and *Biddinger* have been often cited and seem to be firmly established and accepted as Ohio law. See 27 Ohio Jurisprudence 2d 504, Section 48 Homesteads.

It seems no longer open to debate that a clearly announced rule of decision of the highest court of a state construing that state's substantive statutes must be followed by the Federal Courts, including their referees in bankruptcy, when applying that statute. *Erie Rd.* v. *Thompkins* and *West* v. *A. T. & T., supra.* That such decisions may reach strict rather than liberal results, is no justification for refusing to follow such decisions. This is especially true when there is no ambiguity at all in the statutory language.

The temptation to be liberal in the application of the exemption statutes of Ohio is great. They are almost a century old without any significant revision. They are not only outdated by time, but are completely outmoded

in concept, miserably failing in their supposed purpose. Section 2329.73, Revised Code, permits certain persons to "* * * hold exempt from sale on judgment or order a family homestead not exceeding one thousand dollars in value." How very generous! With to-days' land values and building costs only a squalid hovel on a spit of the wonderful world of Ohio would qualify. With the extensive mortgage financing encountered today, in practically all bankruptcy matters, the temptation is to construe "value" as "equity" thus perhaps restoring some vitality to the statute. However, that temptation ought to be resisted, as an unwarranted judicial invasion into the province of the Legislature.

I hold that the bankrupt was the owner of a homestead at the date of filing his bankruptcy, which homestead he occupied with his wife; that as of that date, he was not entitled to the benefit of Section 2329.81, Revised Code, being clearly excluded by the language of the statute itself and by decisions of the Supreme Court of Ohio; and that his failure to assert a homestead exemption under Section 2329.80, Revised Code, in his schedules does not bring about a factual change permitting him to claim an exemption under Section 2329.81, Revised Code.

Based upon the foregoing I conclude that the bankrupt, being the owner of a homestead on the date his bankruptcy was filed, is not qualified to claim an exemption under Section 2329.81, Revised Code. Such ownership puts him beyond the pale of the statute just as those husbands and wives who are not living together, are beyond its pale. Therefore, it is

ORDERED that the objections to the trustee's report of exempt property be and the same hereby are overruled; said trustee's report be and it hereby is approved; and the trustee is authorized and directed to take appropriate steps to collect for the benefit of this estate the disputed asset in question, to wit: The proceeds of the tax refund.