In re Balsley, Bankrupts.

[Cite as In re Balsley, Bankrupts, 15 Ohio Misc. 233.]

(Nos. 46183 and 46182—Decided May 21, 1968.)

234

United States District Court for the Southern District of Ohio Eastern Division.

Mr. *Ralph G. Marshall*, for Ernest Edward Balsley and Mary Grace Balsley.

Mr. *Paul J. Borowitz*, trustee, *pro se*.

DILENSCHNEIDER, referee in bankruptcy. This matter is before the court on the bankrupts' objections to the Trustee's Report of Exempt Property wherein the trustee denied the exemption of an anticipated income tax refund in lieu of homestead on the ground that the bankrupts were the owners of a homestead. The bankrupts claim that they were purchasing real estate on land contract and at the time they filed their bankruptcy petitions said contract had terminated by reason of nonpayment of installments, consequently argue the bankrupts, there was no homestead at the time the petition in bankruptcy was filed and the bankrupts were therefore entitled to claim an anticipated income tax refund in lieu of homestead.

Now being fully advised by the matters of record in this case and by briefs of counsel, the court makes the following findings of fact:

In August 1965 Ernest Edward Balsley and Mary Grace Balsley, bankrupts herein, purchased real estate known as Lot 68 Chapman's Addition from one Bessie Smoot of Zanesville, Ohio on land contract. The purchase price was $6700 to be paid in installments of $60 a month. The Balsleys took possession of the property and made installment payments until late 1967. On January 15, 1968, Ernest Edward and Mary Grace Balsley filed petitions in bankruptcy. At the first meeting of creditors in this case Mr. Balsley testified that he was still in possession of the property, that on the date of filing in bankruptcy $5550.66 was due on the land contract, and that on the date of filing he had made no payments to Bessie Smoot for at least two months. Mr. Balsley also testified that he anticipated a

federal income tax refund for excess taxes withheld during 1967 in the amount of $300. The petition in bankruptcy claimed this income tax refund exempt in lieu of homestead.

A trustee was appointed in this case and on March 20, 1968, he filed a report of exempt property wherein he found the bankrupts were owners of a homestead and so not entitled to an exemption in lieu of homestead. The bankrupts, through their counsel, filed objections to the trustee's report.

The first question before this court is whether a vendee's interest in a land contract qualifies as a homestead under Ohio law. The earliest reported case in this area is *Robinett* v. *Doyle* (Athens Dist. Ct. 1860), 2 Ohio Dec. Rep., 391, where an appellate court sitting in Athens County found that a land contract vendee with no legal title to real estate had no interest which could have been levied on by execution and so had no homestead. However, in *Radford* v. *Kachman* (Athens Co. 1927), 27 Ohio App. 86, another appellate court sitting in the same district had the same question before it and at page 91 of its opinion said:

"Manifestly Kachman was the owner of the equitable title to the property. The well-nigh universal holding is that an equitable title is sufficient to support a homestead.

"The homestead law protects a possession held under an equitable as well as one under a legal title. Under this rule a homestead may be claimed in land of which the party is in possession under a contract of purchase or any other equitable title as well as if he held the legal title." 13 Ruling Case Law, 569, and authorities cited.

The court went on to repudiate Robinett saying:

"It is true that *Robinett* v. *Doyle*, 2 W. L. M., 585, 2 Dec. Rep., 391, is an authority to the contrary, but that case was decided at a time when exemptions were only allowed against sales on execution, and as an equitable interest could not be sold on execution it was held that an equitable estate was insufficient to constitute a home-

stead. Exemptions are no longer confined to rights as against execution, but can be asserted against an order of attachment, an order of sale in equity, or any other writ by which the debtor can be deprived of title and possession. Section 11730, General Code. The *Robinett case* is no longer an authority."

A close reading of the *Radford case* reveals that the court had already reached its decision on other grounds and that the above paragraph might be considered dicta. However, in *Ohio Savings and Trust Co.* v. *Schumacher et al.* (Tuscarawas County 1929), 36 Ohio App. 65, 70, we read:

"And in the recent case of *Radford* v. *Kachman* * * * it is held that an equitable title to land is sufficient title upon which to base a claim of homestead."

Whatever may have been the rule one hundred years ago in Ohio, this court believes that there is sufficient authority and it is good reasoning today to declare that the owner of an equitable interest in real estate, such as a land contract vendee, does have a homestead interest in that real estate.

The second question before this court is whether a land contract vendee in default of payments continues to have an equitable interest in the real estate which he occupies. The land contract in question is not in evidence in this case and the court therefore is not informed as to whether this particular contract contained automatic rescission provisions or whether time was of the essence of the contract. Moreover, whereas Mr. Balsley, at the first meeting of creditors testified he was two payments behind on his land contract when he filed his petition in bankruptcy, the reply brief of counsel indicates he was 120 days in arrears on the date of filing. What is clear, however, is that even after he stopped making payments on the land contract, Mr. Balsley, together with his wife, remained in possession of the land through the date of filing and adjudication in bankruptcy, through the date of the first meeting of creditors on February 15, 1968, and apparently remains in possession at the present time.

There is no indication that Bessie Smoot, the land contract vendor, ever asked Mr. and Mrs. Balsley to leave the property or brought any action to recover possession of the premises.

The trustee claims that under the rule of *State, ex rel. Morgan,* v. *Stevenson* (Franklin County 1931), 39 Ohio App. 335, a land contract remains in force after a purchaser's default until a court of competent jurisdiction orders its cancellation. A reading of the *Stevenson case,* reveals that the immediate question before that court was the competency of a Justice of the Peace Court in a case involving title to real estate. The *Stevenson* court did not hold that litigation was the only method of cancellation of a land contract.

Counsel for the bankrupts refers us to "Vendor and Purchaser" 54 Ohio Jurisprudence 2d 656, where we read:

"It is commonly accepted that a contract to sell and convey real property may be terminated by self-help, that is, by an informal rescission by one or both parties, a judicial decision or declaration being unnecessary * * * where one party is materially in default, although there is some authority to the effect that the action of a court is necessary to terminate the contract where one party is in default."

Although the quoted language seems to indicate that either party to a land contract may unilaterally rescind, we later read at "Vendor and Purchaser" 54 Ohio Jurisprudence 2d 664, that:

"A material breach by the purchaser, without repudiation, is sufficient to give rise to the right of the vendor to rescind."

After reviewing the cases cited in support of these propositions, and after considering the lengthy note "What constitutes abandonment of land contract by vendee," 68 A. L. R. 2d 581 (1959), this court is of the opinion that continued possession of the real estate by the bankrupts runs counter to any intention to abandon the land contract which might be inferred from the failure to continue regular payments on the purchase price. Quite

likely such failure to continue payment gave rise to a right on the part of the vendor to rescind the contract, but the evidence shows that on the date of filing in bankruptcy neither demand for payment, nor request to leave, nor institution of litigation, nor sale to another had been made by the vendor. Consequently on that date the vendor had not exercised the right to rescind. The court therefore finds that on the date of adjudication in bankruptcy the land contract was still in existence, the vendor having taken no steps to exercise rescission rights and the vendee being still in possession. Since the land contract remained in existence, the vendee continued to have an equitable interest in the property and hence a homestead.

That the owner of a homestead may not claim property exempt in lieu of homestead is an issue set to rest in a definitive opinion by Referee D. J. Kelleher of this court in *In re Glen Dewayne Johnston*, 15 Ohio Misc. 207, wherein the relevant Ohio and Federal cases in the area were examined at length. Referee Kelleher held, and this court holds that where a bankrupt is the owner of a homestead he may not avail himself of the exemptions in lieu of homestead provided by Section 2329.81, Revised Code.

It Is Therefore Ordered that the objections of the bankrupts to the trustee's report of exempt property ought to be, and the same hereby are, overruled.